TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-05-00063-CV






Brenda C. Kirby, Appellant


v.


William Tjarks, Gayle Rankin and June Wendy Johnson, individually,

as Heirs of the Estate of June Bruckmiller, Deceased, and as

Beneficiaries of the Bruckmiller Trust, Appellees







FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT

NO. 11,800, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Brenda Kirby appeals the district court's judgment that she converted appellees' real
and personal property. Appellees (the "Children") (1) are the beneficiaries of the Bruckmiller Trust,
an inter vivos trust established by their mother, June Bruckmiller, and their step-father, Charles
Bruckmiller. Under the terms of the trust, the Children became beneficiaries upon the death of their
mother and step-father; June died first in 1993 and Charles died in 1997. After June's death, Charles
partially revoked the trust. In order to effectuate the partial revocation, Charles evenly divided the
trust's brokerage account, placing one-half in his personal brokerage account and leaving the other
half in the trust. He also transferred title to real property held by the trust to himself individually. 
The Children claim that Charles violated the terms of the trust by removing assets from June's
irrevocable interest in the trust.

 After June's death, with the advice of his friend and attorney Jerome Kirby, Charles
executed a new will, naming Jerome's wife Brenda Kirby executrix of his estate (the "Bruckmiller
Estate") and giving her an unlimited power of appointment. (2) After Charles's death, Kirby
subsequently transferred all of the Bruckmiller Estate's assets to herself. The Children filed suit in
district court seeking a declaration that the Bruckmiller Estate contained assets that lawfully
belonged to them as beneficiaries of the Bruckmiller Trust. (3) The Children also claimed that Kirby
converted their property by transferring assets of the Bruckmiller Estate to herself. The district court
denied the Children's request for declaratory relief but rendered judgment on their conversion claim. 
The district court awarded the Children monetary damages and a one-half interest in the real property
that Charles removed from the Bruckmiller Trust. In addition, the district court awarded the
Children attorney's fees. 

 Kirby appeals the district court's judgment claiming that (1) Texas does not recognize
a cause of action for the conversion of real property; (2) there is no evidence to support the district
court's judgment that she committed conversion in her individual capacity; (3) the Children were
estopped from claiming an interest in the Bruckmiller Trust's brokerage account; (4) the district
court's judgment is void because it lacked jurisdiction; (5) the Children are not entitled to attorney's
fees as a matter of law; and (6) she is entitled to attorney's fees under the declaratory judgments act. 
We hold that the district court had jurisdiction over the underlying litigation because the Children's
suit concerned the interpretation of a trust instrument. We agree that real property cannot be
converted as a matter of law. Furthermore, the record does not contain legally and factually
sufficient evidence establishing that the Children were entitled to possession of any property
individually held by Kirby, a required element for a claim of conversion. Therefore, we reverse and
render judgment that Kirby did not commit conversion as a matter of law. (4) Additionally, we reverse
the district court's award of attorney's fees.


BACKGROUND

 On September 8, 1968, June and Charles Bruckmiller were married in New York. 
June had three children--William, Gayle, and Wendy--from a prior marriage; Charles had no
children. The Bruckmillers lived in New York until 1986 when they moved to Texas.

 In 1992, the Bruckmillers established an inter vivos trust to which they transferred
most of their separate and community property. Although the corpus of the Bruckmiller Trust
included nearly all of the Bruckmillers' assets, this appeal concerns (1) June's separate property,
which consisted of stocks and bonds she had inherited from her mother; and (2) the couple's
community interest in their home in Kingsland, Texas, and a vacant lot in Flagler County, Florida
(the "Florida lot"). (5) Jerome Kirby prepared the trust documents.

 The purpose of the trust was to manage the Bruckmillers' estate during their lifetimes. 
Charles and June were co-trustees with equal authority and control over all trust property. 
Additionally, Charles or June could revoke, modify, or amend the trust at any time during their
lifetimes. Upon the death of the first spouse, the trust became irrevocable as to the deceased's
interest. The surviving spouse could revoke or modify any portion of the trust pertaining to assets
that had been owned by that spouse before the trust was created. Any revocation or modification
could include "an undivided one half of all increases and changes in assets through trades, sales,
exchanges or purchases." A partial revocation could affect only the surviving spouse's separate
property and one-half interest in community property held in trust. Upon the death of the second
spouse, the Children would share equally all assets remaining in the Bruckmiller Trust. 

 June died intestate in October 1993. She had not revoked or modified her interest in
the trust. In January 1994, Charles directed Jerome Kirby to amend the trust to remove Charles's
separate property and his share of community property. In May 1996, Charles partially revoked the
trust as to these assets. To effect the change he divided the trust's brokerage account, leaving one
half in the trust account and transferring the other half to his personal account. He also transferred
full title to the Kingsland house from himself as trustee of the Bruckmiller Trust to himself
individually.

 In July 1996, Charles executed his new will with Jerome Kirby's help. (6) In the will,
Charles appointed Jerome Kirby's wife, Brenda Kirby, independent executrix with the "power to
appoint or designate those persons or institutions . . . who are, in her sole judgment, justly or
equitably entitled to receive or ought to receive all or part" of his estate (the "Bruckmiller Estate"). 
When Charles died in December 1997, his estate included the following assets: (1) the Kingsland
house; (2) the Florida lot; (3) approximately $163,673 held in four separate bank accounts; (4)
Charles's personal brokerage account; and (5) various items of personal property. In May 1999, as
executrix of the Bruckmiller Estate with the power of appointment, Kirby transferred all of these
assets to herself. Shortly after Charles's death, the brokerage account remaining in the trust, valued
at approximately $185,000, was distributed in equal shares to the Children.


 County court proceedings

 After his death in 1997, Kirby filed an application for the probate of Charles's will
in the constitutional county court of Llano County. The county court ordered that the will be
admitted to probate, issued letters testamentary, and appointed Kirby independent executrix of the
Bruckmiller Estate. The Children filed a motion seeking to remove Kirby as independent executrix
of the estate. Kirby then filed a motion to transfer the probate proceedings to district court. The
county court granted Kirby's motion and transferred the case to district court for determination of
all issues relating to the Children's motion. At the time of this appeal, no action had been taken by
the district court on these matters. In 2002, Kirby finally filed an inventory, appraisement, and list
of claims for the Bruckmiller Estate with the district court. 


 District court proceedings

 In May 1998, the Children filed a separate suit in district court against the
Bruckmiller Estate; Kirby, individually and as executrix of the Bruckmiller Estate; and Jerome Kirby
(collectively the "Defendants"). (7) The Children insisted that Charles improperly removed from the
Bruckmiller Trust June's separate property and her one-half interest in the couple's community
property. Specifically, the Children claimed that the Bruckmiller Trust's brokerage account was
originally funded with June's separate property. Thus, by ordering that the account be divided in
half, Charles removed more than his community interest in "one half of all increases and changes
in assets through trades, sales, exchanges or purchases." In addition, the Children argued that the
Kingsland house was community property belonging to the Bruckmiller Trust. Thus, Charles could
not transfer from the trust more than an undivided one-half interest in the home to himself.

 In their fourth amended petition, the Children alleged seven alternative theories of
recovery. In Count 1, they requested that the district court construe the trust documents and declare
that (1) they are the rightful owners of the property and assets of the Bruckmiller Trust as of
Charles's death; (2) Charles exceeded his authority by revoking more than his interest in the trust
after June's death; (3) Charles improperly removed June's separate property from the trust after her
death; (4) the inventory of the Bruckmiller Estate wrongfully lists property belonging to the
Bruckmiller Trust; and (5) they collectively own, as beneficiaries of the trust, June's one-half
community property interest in the Kingsland house and the Florida lot. In Count 2, the Children
asserted that the Defendants were jointly and severally liable for conversion and trespass to chattel. 
In Counts 3, 5, 6, and 7, the Children averred that the Defendants were liable for tortious
interference, money had and received, civil conspiracy, and failure to make a complete accounting
of the property and accounts belonging to the Bruckmiller Trust. In Count 4, the Children claimed
that Charles violated the trust code and that, consequently, the Bruckmiller Estate is liable for his
actions.

 At trial, the Children presented expert testimony and evidence indicating that Charles
removed June's separate property from the Bruckmiller Trust when he transferred one half of the
Bruckmiller Trust's brokerage account to his personal account. By elaborately tracing the ownership
history of certain stocks and bonds held by the Bruckmiller Estate, the Children claimed that it was
possible to determine what June's interest in the Bruckmiller Trust's brokerage account would have
been worth at the time Charles died if he had not removed her separate property. The value of the
brokerage account upon Charles's death is important because that is when the Children became
beneficiaries of the trust.

 Ultimately, the district court rendered judgment in favor of the Children "on their
claim of conversion against Defendant Brenda C. Kirby, in her individual capacity only, as the
convertor." The district court awarded the Children $139,000 in damages plus interest. The district
court reached this figure by subtracting the $185,000 previously distributed to the Children from the
amount that the Children's expert witness claimed June's irrevocable interest in the trust's brokerage
account would have been worth at the time Charles died, approximately $324,000. The district court
additionally awarded the Children a one-half interest in the Kingsland house and the Florida lot, and
attorney's fees. The district court denied all relief not granted in its judgment and ordered that the
Children take nothing from the Bruckmiller Estate, from Kirby in her role as executrix of the
Bruckmiller Estate, or from Jerome Kirby, individually. 

 This appeal followed.


DISCUSSION

Jurisdiction

 In her fourth issue, Kirby claims that the district court's judgment is void because the
constitutional county court in Llano County had dominant jurisdiction to determine the Children's
claims pertaining to property held by the Bruckmiller Estate. Kirby insists that because the probate
proceedings were initiated prior to the filing of the Children's suit, the constitutional county court
had dominant jurisdiction over all matters appertaining to or incident to the administration of the
Bruckmiller Estate. We disagree.

 As a general rule, the court in which a suit is first filed acquires dominant jurisdiction
to the exclusion of other courts. Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 248 (Tex. 1988);
Schuele v. Schuele, 119 S.W.3d 822, 824 (Tex. App.--San Antonio 2003, no pet.). Dominant
jurisdiction, however, is a concept that applies when separate suits are filed in courts with concurrent
jurisdiction. Schuele, 119 S.W.3d at 824. Therefore, we must first determine whether the Llano
County Court had any authority to hear the Children's suit.

 District courts and statutory probate courts are the only courts with jurisdiction over
trust proceedings. See Tex. Prop. Code Ann. § 115.001 (West Supp. 2005); (8) Schuele, 119 S.W.3d
at 825. Because the Children's case involves the construction of the Bruckmiller Trust, the Llano
County Court lacked jurisdiction to consider the Children's claims. Thus, despite the fact that the
district court's judgment affects the administration of the Bruckmiller Estate, the Llano County Court
did not acquire dominant jurisdiction over the Children's suit. Kirby's fourth issue is overruled.


Conversion of real property

 In her first issue, Kirby argues that the district court erred by awarding the Children
a one-half interest in the Kingsland house and the Florida lot because Texas law does not recognize
a cause of action for the conversion of realty. Conversion is defined as the wrongful exercise of
dominion and control over another's property in denial of or inconsistent with his rights. Green
Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997); Bandy v. First State Bank, 835 S.W.2d 609,
622 (Tex. 1992). Real property cannot be converted. See Williams v. City of Dallas, 53 S.W.3d 780,
787 (Tex. App.--Dallas 2001, no pet.) (defining conversion as unauthorized and unlawful
assumption and exercise of dominion and control over personal property of another); Lighthouse
Church v. Texas Bank, 889 S.W.2d 595, 599 n.4 (Tex. App.--Houston [14th Dist.] 1994, writ
denied); Pierson v. GFH Fin. Servs. Corp., 829 S.W.2d 311, 314 (Tex. App.--Austin 1992, no writ)
(noting that real property cannot be converted).

 In response, the Children insist that the district court awarded them a one-half interest
in the real property pursuant to their claim for declaratory relief. (9) We recognize that, in order to
conclude that Kirby was liable for conversion, the district court necessarily construed the terms of
the Bruckmiller Trust and determined the Children's rights to certain properties. We also understand
that facts implied in support of the Children's conversion claim could also support the requested
declaratory relief. However, the district court's judgment states, "The court hereby RENDERS
judgment for Plaintiffs [the Children] on their claim of conversion against Defendant Brenda C.
Kirby, in her individual capacity only, as the convertor." The judgment is silent as to the Children's
declaratory claim, except that it contains a Mother Hubbard clause denying all relief not specifically
granted. The Children did not appeal the denial of their claim for declaratory relief, nor did they
request that the judgment be modified to support the award of the real property on grounds other than
conversion. Therefore, we will not imply relief on grounds overruled by the trial court.

 We sustain Kirby's first issue, that real property cannot be converted. Accordingly,
we strike the district court's award to the Children of a one-half interest in the Kingsland house and
the Florida lot because the awards do not comply as a matter of law with the district court's judgment
that the Children prevailed on their conversion claim.

Sufficiency of the evidence

 In her second issue, Kirby asserts that there is no evidence to support the district
court's judgment for the Children on their conversion claim against her in her individual capacity. 
Specifically, she claims that there is no evidence in the record that could support a finding that she
individually converted any remaining interest the Children may have had in stocks and bonds
formerly held by the Bruckmiller Trust. To establish a claim for conversion of personal property,
the Children must have proven that: (1) they owned or had legal possession of the property or
entitlement to possession; (2) Kirby unlawfully and without authorization assumed and exercised
dominion and control over the property to the exclusion of, or inconsistent with, their rights as
owners; (3) they demanded return of the property; and (4) Kirby refused to return the property. See
Smith v. Maximum Racing, Inc., 136 S.W.3d 337, 341 (Tex. App.--Austin 2004, no pet.). Kirby
claims that the record does not contain sufficient evidence to establish any of these elements.

 Kirby timely requested findings of fact and conclusions of law pursuant to Texas
Rules of Civil Procedure 296 and 297; however, the district court did not file any findings or
conclusions. Tex. R. Civ. P. 296 & 297. When a bench trial is conducted and the court does not
enter findings of fact and conclusions of law to support its ruling, all facts necessary to support the
judgment are implied. Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 52 (Tex. 2003); BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002). Because the district court
granted judgment for the Children on their conversion claim but did not enter specific findings of
fact or conclusions of law, we review Kirby's complaints under the presumption that all findings and
conclusions were made in favor of the judgment.

 Implied findings are not conclusive and may be challenged on the basis of legal and
factual insufficiency when the appellate record includes the reporter's and clerk's records. BMC
Software Belg., 83 S.W.3d at 795. We review the trial court's implied findings by the same
standards applied in reviewing the legal and factual sufficiency of evidence supporting a jury's
finding. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994). In a challenge to legal sufficiency, we review the evidence in the light most favorable
to the challenged finding and indulge every reasonable inference that would support it. City of Keller
v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. Id. at 827.
The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under
review. Id. 

 In reviewing the factual sufficiency of the evidence, we consider and weigh all the
evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We
may not substitute our own judgment for that of the trier of fact, even if we would have reached a
different result on the evidence. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998). Therefore, we will reverse only if the overwhelming weight of the evidence indicates the
district court's judgment was clearly wrong and unjust.

 Kirby argues that the record does not contain legally and factually sufficient evidence
to support the district court's implied finding that the Children were entitled to any property held by
her individually, which is the first element of a conversion claim. See Maximum Racing, 136 S.W.3d
at 341. The Children maintain that Charles's partial revocation of the Bruckmiller Trust resulted in
the improper and unlawful removal of a portion of June's irrevocable interest in the Bruckmiller
Trust's brokerage account. The Children argue that evidence in the record conclusively establishes
that the improperly removed portion of the trust's brokerage account contained stocks and bonds that
were included in the Bruckmiller Estate and were subsequently transferred by Kirby to herself. The
Children argue that evidence in the record conclusively establishes that the improperly removed
portion of the brokerage account became an asset of the Bruckmiller Estate and that Kirby, as
executrix of the estate, transferred that asset to herself individually as beneficiary. From this, the
Children insist that Kirby has unlawfully exercised dominion and control over stocks and bonds to
which they are legally entitled as beneficiaries of the Bruckmiller Trust.

 The record contains evidence successfully tracing certain stocks and bonds to June's
inheritance; she then contributed this separate property to the Bruckmiller Trust. After June's death, 
Charles wrongfully assumed that the trust was community property and transferred half of the
brokerage fund to his individual account. However, the trust specifically provides, "No action shall
lie at law or in equity in favor of beneficiaries who may receive future benefits [the Children] against
beneficiaries or their estates, who are currently receiving benefits or have received benefits in the
past [Charles or June Bruckmiller], absent intentional fraud." The trust also states, "No remainder
interest [the Children] shall have a cause of action against the Trustees [Charles or June] or life
estate beneficiaries for waste." 

 Alvin Golden, co-counsel for appellant, argued that the primary goal of the
Bruckmiller trust as written was to support Charles and June during their lives, not to preserve the
assets for the Children. The two exculpatory provisions, insulating Charles and June as trustees from
any suit by the Children, are strong evidence of this goal of the trust. The legislature has expressly
authorized the use of such exculpatory clauses, stating that they can relieve an individual trustee
from liability for all actions except a breach of trust committed in bad faith, intentionally or with
reckless indifference to the interest of the beneficiary, or for any profit derived by the trustee from
a breach of trust. See Act of May 27, 1983, 68th Leg., R.S., ch. 567, art. 2, § 2, 1983 Tex. Gen.
Laws 3332, 3358 repealed by Act of May 12, 2005, 79th Leg., R.S., ch. 148, § 29, 2005 Tex. Gen.
Laws 287, 296; see also Texas Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 249-50 (Tex. 2002). 
Currently, the trust code provides that the terms of a trust prevail over any provision found in the
code, except in limited circumstances not present in this case. Tex. Prop. Code Ann. § 111.0035(b)
(West Supp. 2005). 

 Neither Charles nor his estate is subject to the legal claims of the Children absent
fraud on his part. The Children made it clear at trial that they were no longer pursuing claims of 
fraud or breach of fiduciary duty against any of the defendants. If the Children can establish that they
are legally entitled to any portion of the trust account that wrongfully became part of Charles's estate,
they can pursue their claim to those assets that flow to the beneficiary of the estate. However, the
Children are barred by the exculpatory provision in the trust from bringing any legal action against
Charles or his estate to establish their entitlement to trust assets wrongly removed; thus they have
no claim to any of the estate's assets in the hands of the beneficiary, Kirby. 

 By assessing liability only against Kirby in her individual capacity, the district court
seems to have acknowledged the bar against suing Kirby as executor of the estate. But unless the
Children can establish their legal rights to the assets held by the estate, they have no claim to those
assets in the hands of the beneficiary. Because of the exculpatory provision in the Bruckmiller Trust,
the Children could not sue Charles or his estate to establish their right to possession of the stocks and
bonds wrongfully removed from the trust by Charles. 

 The Children suggest that the Kirbys may have exercised undue influence over
Charles's decisions to amend the trust and rewrite his will. But there is also evidence of Charles's
natural feelings of ill will toward the Children. There were allegations that one of the Children made
an obscene gesture toward his mother's casket in Charles's presence and that another threw the
elderly Charles up against the wall during a physical altercation. Only one of the Children, Wendy
Johnson, visited Charles after June's death; there is no indication in the record that the other
Children had any contact with Charles. Moreover, Charles specifically banned the Children from
attending his funeral service. In the years following June's death, it appears that the Kirbys became
Charles's only friends and family. Thus, Charles could have reasonably intended to make the
Kirbys, rather than the Children, the beneficiaries of his estate.

 In the end, the Children can only claim an interest in the wrongfully removed portion
of the brokerage account as future beneficiaries of the Bruckmiller Trust; but that very trust prevents
a future beneficiary from bringing any legal action against the Bruckmiller Estate to establish their
alleged right of possession to the stocks and bonds. If they have no claim against the estate, they
have no claim against the assets of the estate in the hands of its beneficiary, Kirby. The Children
were legally prohibited from establishing their entitlement to certain stocks and bonds held by Kirby. 
We sustain Kirby's second issue and reverse the district court's judgment that Kirby converted
personal property belonging to the Children. 


CONCLUSION

 We reverse the district court's judgment and render judgment that Kirby did not
commit conversion as a matter of law. We also reverse the district court's award of attorney's fees.



 __________________________________________

 Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Reversed and Rendered

Filed: March 23, 2006
1. Appellees include William Tjarks, Gayle Rankin and Wendy Johnson, individually, as heirs
of June Bruckmiller's estate, and as beneficiaries of the Bruckmiller Trust. For clarity, we will refer
to appellees collectively as the Children.
2. We will refer to appellant Brenda Kirby as "Kirby" and to her husband by his full name.
3. The Children sued against Kirby, individually; Kirby, as executrix of the Bruckmiller
Estate; the Bruckmiller Estate; and Jerome Kirby.
4. In light of our reversal of the district court's judgment, we need not reach Kirby's third
issue concerning whether the Children were estopped from claiming an interest in the Bruckmiller
Trust's brokerage account.
5. There is no evidence in the record that title to the Florida lot was ever transferred to the
Bruckmiller Trust, and all parties agree that the Florida lot was Charles's and June's community
property and not an asset of the trust.
6. Jerome Kirby testified that he did not actually draft Charles's will and that he hired a fellow
attorney, Wade Hutto, to draft and execute the document. Although there is a dispute in the record
as to the role Jerome Kirby played in this process, there is little doubt that he served as counsel to
Charles in initially recommending the trust, in partially revoking the trust, and generally in managing
his estate.
7. The Children's suit was originally filed in Fort Bend County but was subsequently
transferred to the Llano County district court.
8. Since the filing of the Children's suit, the legislature has amended property code section
115.001. See Act of May 24, 2005, 79th Leg., R.S., ch. 148, § 22, 2005 Tex. Gen. Laws 294. 
Because the changes do not affect our analysis, we refer to the current version of the statute.
9. In their declaratory claim, the Children asked the district court to construe the terms of the
Bruckmiller Trust and to declare their rights to property formerly held by the Bruckmiller Trust. In
particular, they argued that the Kingsland house and the Florida lot were Charles's and June's
community property and that June's one-half interest in community property held by the Bruckmiller
Trust became irrevocable upon her death. Here, the Children aver that the district court's award of
the real property interests demonstrates that it determined (1) the properties were community
interests held by the Bruckmiller Trust, (2) that Charles lacked the authority to transfer title to the
properties, and (3) that they were entitled to June's irrevocable interests as beneficiaries of the
Bruckmiller Trust upon Charles's death.